The opinion of the court was delivered by

Mr. Justice Richardson.
The clause of the act of the City Council upon which this case depends is in the following words: « All personal estate consisting of bonds, notes, fee. fee. six and seven percent, stock of the United States or other obligations upon which interest has been or will be received during the year, over and above the interest which has been paid, except fee. fee. twenty five cents on every hundred dollars.” The act lays the tax of twenty-five cents per hundred dollars upon such stock only as bears a neat annual interest or profit to the owner. And the question to be considered is, may the annual profit or interest of the six per cent, stock of the United States, be taxed in the hands of individual citizens, without violating the constitution of the United States. If the right to tax such stock be not inconsistent with the express limitation of the powers of the individual states, tjO levy taxes, nor inconsistent with the powers delegated to congress by the constitution, no prohibition can be *341 issued. Fot such stock being the subject matter of property, the revenue derived from it is in this respect, like any other iu-edme belonging to the citizen, a subject for legitimate taxation> unless shielded.from the common burthen of taxes by the Federal constitution. The determination of the question depends then upon two considerations:
1st. Does the constitution lay any express restrictions, applicable to the tax in question, upon the power inherent in the State sovereignties to levy taxes at their discretion; or
2dly. Does such a restriction necessarily arise out of the essential rights or superintending control conferred upon the government of the United States.
The only express limitations to the power of the individual states, to levy and collect taxes, is found in the 18th section of the 1st article of the constitution of the United States, in these words: *• JSTo state shall, without the consent of congress, lay any impost or duties on imports or exports, except.” &c. fee. “ No state shall, without the consent of congress, lay any duty of tonnage,” fee. But there is nothing in those limitations which can mingle itself with the question before' us. And we may come at once at the only true ground of controversy, i. e. the constructive restriction, unavoidably ’ arising out of the powers of the United States government, as delegated by the constitution.
Judicial decisions upon the rights, powers and attributes of the general and state governments; wherever the constitution is silent, will often form a topic of much feeling and interest to the people and of great moment to the Union. So much so, that it has occurred to my mind as a peculiar and unanswerable reason, arising out of our system of government, why the American judiciaries, both state and federal, even more than any other judicial tribunals on earth, should be so constituted as to stand independent of íémporary excitement and unswayed by pride, popular opinion o,r party spirit, which must in every country from the very nature of man, pervade and influence: more or less, every department of government! But whkh among us, being the natural offspring of the free institu- *342 íions we prize so highly, and thus claiming a right as by inheritance to be heard, assert their influence, if they do not frequently direct and govern the firmest minds. And yet while We preserve the principle of judicial independence, I would say also to the pervading force of, public opinion, “ esto perpetua,”
Every question therefore having for its object the construction of the respective powers of the general and state governments, demands a full and impartial consideration, regarding 'conflicting interests equally and fearlessly, and directing a steady aim to the final purposes to which the decision maj' be subservient.
But to return to the argument: • Although as a general ■rule, the disadvantages finally attending a tax upon stock, by driving away a species of property so moveable, have been acknowledged, yet the right of ail governments to tax every kind of property, or income, may be assumed as an incontrovertible principle: and as we find no express limitation affecting the particular question before us, we are to enquire if there is necessarily any constructive restriction arising out of the constitution.
It is urged.that congress having a right to borrow money, the exercise of which right is an essential instrument in the ope-fations of the government, the tax in question has a tendency to impair and might, if allowed, put a-stop finally to the practical right of borrowing, and is therefore unconstitutional. Here., then two. unquestionable rights are supposed to be in collision; the right to borrow money on the one side, and the right to tax on the other. In reconciling conflicting rights, or in laying down the constitutional line of. demarcation in such instances, although we are not to anticipate that perfect harmony and forbearance will be always practised between the general and state governments, yet we are not to presuppose hostility. There is between them a rational confidence, naturally arising out of their relative situation, mutual interest and reciprocal dependence, similar to that existing between the different departments of the same government, which while they watch and check each other, do yet, and with great reason, confide in the *343 NKeg'i’ity, sound sense and good dispositions of each member. Guided then in the enquiry by a proper sense of the character of the governments which form our entire sj'stem, let us weigh the arguments presented by the case.
The plaintiffs urge that their objection to the tax is supported by the doctrine established in the case of M'Culloch, vs. The State of Maryland, 4th Wheaton, p. 316, which decides that the stale governments cannot tax the means constitutionally employed by the government of the United States to Carry into operation any of its essential powers. The court there declared. that the Bank of the United States could not he taxed by the States, because that institution was a constitutional instrument or means of carrying into effect the allowed powers of the gen-feral government. But the judges say (p. 436.) “ This opinion docs not deprive the states of any resources which they originally possessed. It does not extend to a tax paid by the real property of the bank,” &c. 8sc. “ nor to a tax imposed on the interest which the citizens of Maryland may hold in this institution,” Sic. &c. Now it is evident that the tax laid by the city council comes within the distinction here recognized and al - lowed, The tax laid by Maryland, being upon the institution itself, was unconstitutional; but the court plainly, say, that if the tax had been upon the interest of an individual stockholder, it would have been constitutional. The distinction is manifest and palpable to the understanding. The bank itself cannot he taxed, because that would be to tax the means of the government and to clog its constitutional operations; but to tax the •portion of stock which belongs to an individual is not to tax the institution itself, nor in any way to clog the operations of the government: and the interest paid-aimually to the stockholders, when received by them, has no longer any connection with the bank, but then becomes money belonging to' individuals in se-veralty, and when so situated is liable of course to be taxed-like any other piece of property belonging- to an individual which is enjoyed under the protection of the state governments'. The judges by way of illustration, sáy, p. 423, “If the tax, as stood, were allowed, the state might tax. any other instrument of *344 the government, as the mint, fee. and defeat all the ends of government.” But assuredly they never meant that the money -coined at the mint, after being paid into the hands of a citizen, -was not a subject of taxation. Congress cannot be taxed, but the individual members may be all taxed in -the states which protect them. The army of the United States cannot be taxed, but who can question that the arms and munitions of war, if ■disposed of, may be taxed in the hands of individual purchasers. ‘ The lands belonging to the United States are a vast source, of revenue and constitute the means'of government, but when .sold,, are- all liable to-taxes. 'In like manner, although the right to borrow money, or more properly the operation or contract of borrowing as practised by the United States, .cannot be taxed, yet the interest or income of the loan, when once paid into the hands of individual lenders, being no longer an instrument ■of government, is liable to the common burthen of taxes like any. Other dollars and cents. Suppose for a moment, instead of paying six or seven dollars per annum, the United States had Contracted to pay six or seven acres of land for the use of ‡ 100, as long as .the money remained unpaid, could not the land when conveyed to the lender be taxed, and where is the differ-•enee between a .premium paid in silver and one in land? If land paid to a soldier for services can bo taxed, land paid to "him for money lent maybe equally taxed. And why not tin; silver received by .him? There can be no difference. We cannot tax the mines of Peru or Mexico, but can there be a move legitimate subject ol taxation tb^nthe gold and silver of South America, if owned here and under the protection of the state?
But it is further urged .that if the tax of the City Council be constitutional, capitalists will be deterred, if not prevented by the high taxes from lending money to the United States; and it must be admitted that if the property derived from the United States were to be exempt from all future taxes, it would enable the government to sell to great advantage. But it would be a privilege without any equivalent, allowed to no other seller, and which would not only greatly dry up the sources of taxes, but directly impede theindispensible right of every state sover* *345 ,ejgnty to draw upon the wealth of its citizens, from whatever source derived, in order to answer its own prosperity and safety.. If the tax had been laid as a penalty upon the contract of lending to the United States, it might have been then said to impair the right of borrowing.
But here the tax is upon the enjoyment of the interest under state protection; and enjoyment and protection being the peculiar incidents which justify taxation* it matters not whence the property was derived. All the property of any individual, enjoyed and protected under the state government, is the subject of taxation, at the discretion of the proper department.
Here let me remark that the twenty-four states which constitute the United States are themselves so many independent nations; each retaining every national power, except where restricted by the federal constitution. And any power, though delegated to congress, is yet, if not expressly taken from the states, reserved, and may be concurrently exercised, both by the state and general governments; unless the exercise of such power by the states be inconsistent with the use of it by the-United States. For instance, “congress has power, to lay and collect taxes, pay debts,” &c. &c. “ provide for the common defence,” fee. “ borrow money, promote the progress of science, provide for calling out the militia, arming them,” &c. &c. 1st. article, 8ih. section of the constitution And yet all the same powers belong to the states individually, and their governments may exercise them without restriction. To this general rule, the only proper exceptions are, where any exercise of power by the states would raise a barrier against the operation of a law of the United States, as if the states were to enact rules-to regulate foreign commerce, or for the naturalization of foreigners, different from those of the United States. In such case, the laws of the United States would, by the 6th article of the constitution, be supreme, and bind this court as well as those of the United States. At the same time, it is true that whenever money is drawn from the citizen in any way by the states, it may-be said to lessen, in some degree, the amount which the general government might otherwise obtain from the same *346 source; and if you press the principal to an extreme, the geiier* al government might thereby be deprived of all the means of direct taxation by the exactions of the states; and mutatis mu-tandis, the states equally deprived by congress: and yet there can be no restriction upon either. But need we réally fear lest they should by such folly verify tlxe just observation “ th\ i excessive taxation is a monster which after devouring every hingelse, devours itself atlast.” Or can there he the least cause for alarm to the United States, seeing that the evil consequences of the tax must recoil upon ourselves, by driving the stock out of Charleston; and thus by depriving the people there of this ■species of property, exemplify the known objection to such taxes. But it never can prevent the loan of money to the United States, at least not in a greater degree than the practice of taxing lands must unavoidably lessen the success of the sales made by the United States, as well as of those made by other proprietors.
When we acquire any interest whatever, we look to government for protection in the use of it, and taxes are the consideration to be paid in return. Such annual tribute is the premium paid for assured enjoyment. However evidentitmaybe moreover, that the United States could not in good faith, tax the interest they have themselves contracted to pay' the lenders; and however comity between dependent governments and the apprehension of raising bp a spirit of retaliation, ought to prevent such a tax on the part of the individual states, yet such views. and fears cannot alter the constitutional right to tax, and are not for our consideration.
It has been also argued, that the tax in question impairs the obligation on contracts, by diminishing the profits of the lender, and thereby impugns another limitation of the power of the individual states; 10th. section 1st. article of the constitution; but the answer to this objection is satisfactory and already implied. Every person who purchases property, takes it subject to the taxes that may be laid by the government .which protects if. The tax arises after the purchase, and is according to the «exigency of the occasion. The land purchased of the United States to day, though not liable in their hands to any taxe^ *347 in ay be taxed in the hands of the purchaser to-morrow, to more than its value. Or the bond received as a security for the pur-chaáe-money of property, or for the payment of a loan of money, may in like manner be taxed to any extent required by the government. In civilized society, taxes constitute the price of protection and are as inseparable from property as obedience is from the citizen. In this respect, there can be no difference between property derived from, or a contract with the United States, and an individual. If indeed the stock of the United States, belonging to a citizen, could in no way be taxed, our government might present the political solecism of individuals protected in the use and enjoyment of their property', yet exempt of right from any contributions to the government protecting; without any equivalent paid for so extraordinary an exemption from the common burthen. How, let me ask, would such a prerogative in a citizen, comport with the essential principle laid down by the modern parent of sound political economy, (A Smith, vol. 3 p. 256.) that “ the subjects of every state ought to contribute towards the support of the government, In proportion to the revenue which they respectively enjoy under the protection of the state,” which as a rule of justice^ and equality', lie illustrates by observing, “ that the expense of government to the individuals of a great nation, is like the expense of management to the joint-tenants of a great estate, who are all obliged to contribute in proportion to their respective interests in tbe estate.” And, although in practice, some persons may escape, yet thepowerto make all contribute equally, is indispensable, to good government. I cannot perceive then that any of the arguments used, bear out the conclusion that the tax laid by the City Council is unconstitutional, although they .nay prove it unwise. I have endeavoured to place the decision of the court upon allowed principles; and to shew that it comes within the distinction admitted in the case ofM'Culloch *s. Maryland, rather than protect it by the decision of this court m the case of Bulow and others vs. the City Council, 1 Not( fy M‘Cord, p. 527,) which supports our present decision to its full extent. But however, hi my own judgment, jugt an¿ *348 rational, constitutional, safe and already adjudged, I am warned by the great difference of opinion upon the bench, that the con • elusion at which a majority of the court has arrived may stilí be erroneous. And when there is so much difference of opinion, it is satisfactory to know that the correctness of the decision-may be yet tested before the tribunal created under tfie constitution, to decide finally such questions. But until the supreme court of the United States shall have so declared, I cannot believe that they ever intended, by the decision in the case of Mc-Culloch, vs. Maryland, to interfere with the right of the states to tax their own private citizens in any way, to any extent* upon any individual property, right or interest whatever. On the contrary, they admit the right to the fullest extent* and only require that in the exercise of it-, the.states shall not reach their object by taxing the means necessarily treed irathe' practical -Operations of the general- government. The tax laid by the City Council being considered constitutional, the order made by the presiding judge is reversed and the motion of the appellants granted.

Huger, Justice,

This was an application- for a prohibition to restrain the treasurer of the City of Charleston from levying a tax imposed by a city ordinance on 6 and 7 per cent stock of the United? States.
The words of the ordinance are, “ All personal estate, consisting of bonds* notes,” &c. &c. “(land 7 per cent stock of the United States* or other obligations upon, which interest has been or will be received during the year, over and above the interest which has been paid, except,” &c. &c. “ twenty-five, cents on every hundred dollars.”'
The prohibition was ordered. A motion is now submitted for the reversal of that order. I am unwilling on so important a question, merely to express my dissent from the judgment of the court. It is now for the first time agitated and ought to- be fully discussed, that it maybe the better understood. It affects the use of a power as essential’ to the general government in periods of difficulty and danger as any other which the people have delegated to it If the city council of Charleston can tax, *349 ihe stock of the United States, eo nomine, the states can, and if the states can, it is impossible not to perceive that the fiscal operations of the general government may be completely frustrated by the states. It will be in vain for congress to pass acts au-thorising the secretary of the treasury to borrow money, if the holders of their stock can be taxed by the states for having lent. Congress may oiler 18 per cent, for loans, but who will lend if the states can appropriate the whole to their use. Whether ■the states will do-so or not may be problematical, but if they can do so, the risk of their doing so must be covered by the terms on which the loans will be made.
There is but one substantial security for the proper administration of our governments; the immediate responsibility of their administrators to the people. If however the people have or feel no interest in the measures of a government, its administrators are only nominally responsible; they will only be checked where they act in derogation.of what is understood or felt to be the interests of their constituents. Remote interests are not teen but by the better informed, and they always must present grounds for much difference of opinion even among the best informed. It is not a sufficient guard to the powers of the general government, that the constituents of the administrators of the state governments have a remote interest in the preservation of those powers, or in an unembarrassed exercise of them by the general government. They may not be seen or may not. be understood, and the very case before us presents a- full illustration of lliis truth. No government, not revolutionary, has ever attempted to tax its own stock, and among others for two Aery satisfactory reasons:
1st. Because such a'tax must necessarily operate injuriously upon all future loans, and
2dly, Because there is in fact a violation of contract in so doing, and therefore such tax ia immoral and impolitic.
Under the influence of these reasons, the legislature of this • state has refused to tax the stock of the United States, but it appears that the citj' council of Charleston have thought differently and have taxed it. There are however some very *350 Obvious reasons Why the council of Charleston should be less disposed 'to impose such a tax than the legislature* In the first place, the city of Charleston being commercial, is more within the influence of the policy of the general government than the legislature; the constituents of whom arc generally agriculturists. In the second place, the'holders of stock being generally monied men and inhabitants of the city, must necessarily have a greater influence with the city council than with the legislature. If therefore the council of the city can believe k politic andjust to tax the stock of the United States, can it bo thought improbable that the legislature may do so? If they Van do so at all, they may do so to any extent; it is equally within their power to tax 20 per cent, or 100 per cení, as 7«j-per cent. What shall govern their discretion it is impossible to foresee. A state or a lew states may concur in a policyat variance with that of the government, nay in hostility to it. This unfortunately has been already witnessed. They may, indeed,, he indisposed to dissolve the union and declare war, when thfej1 may have no objection to counteract congress and control its measures, by the exercise of a constitutional' power. Seven tenths of the. stock of the United States is owned in the cities-of Boston, Ncw-York, Philadelphia, Baltimore and Charles-, ton. The same causes which have concentrated the stock ins these cities, will in all probability continue to operate* and the greater part of future loans will be effected there. Should' therefore even so small a portion of the United States as these cities, unite in taxing stock to any considerable amount, the government may be defeated, and will certainly be impeded in its fiscal operations, to the extent of any tax imposed. It may be, supposed that these cities would be checked in such proceedings by their state legislatures. Whether this could be done, must depend upon the constitutions of the states and the charters of the cities. It may not suit -the prevailing policy of a state to interfere in such a case, even if it possesses the power. We know from the charter of the city of Charleston, that the legislature of this state can ¡interfere and repeal- .the ordinance in, question; this, however, has not been done, although they have *351 refused to impose such a tax themselves, and though South-Carolina' is, has always been, and I hope will ever continue to be as national as any state in the Union.
It may be said, that admit all this to be true, it cannot effect the question before the court; who are called upon to decide what the constitution is, and not what it ought to be. The judicial branch of the government most certainly does not possess the power of legislating, much less then can they claim the power of making A constitution. But in construing the constitution, they must look to the objects it professes to attain, and they cannot so construe it as to defeat the very end and aim of its creation, nor should they make it inconsistent with itself if it be possible to avoid it. The general powers of congress may be sufficiently designated in the constitution, but the extent and ramifications of each power it was not in the wisdom of man to foresee and precisely describe. How they are to operate and exhibit themselves, must depend upon the future contingent circumstances of the nation; and as these must be forever varying, constitutional questions or doubts must arise as long as-the constitution shall exi^t. These are the certain and legitimate consequences of a written constitution. The numerous questions which the statute of frauds has given rise to, simple as was its object, may afford some intimation of the number which an instrument, so complicated and general in its objects as the constitution may be expected to produce. The great difficulty is, not only in ascertaining and defining the powers which result from those which are expressly given to the government, but, (as in this case and in that of .the Bank of the United States) in determining the influence of these on the powers of the different states. In the decision of such cases there must necessarily be an extended construction which may bear the semblance of legisla-tion. I am not conscious of even a desire to extend unnecessarily the powers of the judiciary; the pursuits and Habits of near twenty years, by far the better part of my life, have given at least to my feelings a direction-decidedly favorable to the legislative branch of the government. When attached in fact as I was in *352 feeling to that brand], I could not but discern the importance of the judicial branch of the government, and the necessity' of leaving to its decision all questions like the one before tile court, though they savoured of legislation. I shall certainly not omit to do now what I formerly regarded as incumbent upon the judiciary to perform.
I shall now proceed to enquire:
1st. Whether the tax in question be an income tax. That it is not, appears very clearly from the facts of the case, as wel . as from the terms of the ordinance. The stock of the state; the. stock of the city; bank stock universally, as well as the profits^ of agriculture, enjoyed by those whp reside in the city, are not taxed: nor does the ordinance affect to regard a as an income tax. It is a tax upontheUnited States stock, eo nomine. As this is not a tax upon income, it is unnecessary to enquire if the city council or a state have the power to lax income, and include therein the interest.received on United States stock. I shall therefore proceed to enquire if the city council or a state havt-the power to tax United States stock, eo nomine.
The first question presented by the enquiry is, what is the meaning" of the term United States stock? - It is, I apprehend, a credit on the government for so much money, on which they have agreed to pay a certain interest. He who has the credit is the holder, and the certificate is the evidence of. the credit and the terms on which the credit has been given. The power to create this credit is expressly given by the 8th section of the first article of the constitution of the United Slates: “ Congress sjhall have power to borrow money on the credit of the United States.” The credit of the United States is the essence of the stock, without it the stock is of no value. The credit of the United States is a creation of the general government, which did not exist until they brought it into being, and in the pro®, duction of which the state governments did not participate!" The state could not tax it before the constitution was formed, for it did not exist; if therefore they can tax it now, it must be by some new power vested in them by that instrument, but there *353 ■’is no such power given: the credit of the United 'States cannot be taxed by the states. •
It is contended that to deny the states a power to tax money loaned to the general government, is to deprive them of a great resource, without any adequate object. In the first place,. I must observe that if the states cannot' tax the stock of the United States, the general government will be able to borrow on better terms, and in this way the people of the United States will be compensated 'for any inconvenience that might result from the exemption of the stock from the taxation of the state governments. In the second place,''I must repeat they have no cause to complain, because it is a creation of the general governmcnf'which the states did not possess before it’s establishment. .But on this subject, I cannot but think that a yery erroneous opinion prevails. It appears to be thought thar for every thousand dollars loaned to the general government, so much taxable property has been withdrawn from the states,' But this is certainly not so: of the ‡ 100,000,000 loaned to the' general government during the late war, how much of it remains with the government? Not one cent. Where then is it? Certainly in the slates. If a certain number of individuals paid it into the treasury of the United States, the government has returned it to individuals living in the different states, and if liable to taxation at all, can now be taxed by the states. If the general government had been foreign to the state governments, or had they hoarded it up, this objection might have had some force; but as fast as they got it, they returned it, and no means’ of the state governments were affected, but by an increased" difficulty of borrowing money, owing to the competition of the general government.
One of the great objects of the constitution was to render the general government independent of the state governments for those pecuniary means which are necessary to effect the great purpose for.which it was established, viz. to form a more perfect union, establish justice, ensure domestic tranquility,' provide for the common defence, promote the general welfare, 8tc. fcc. If however means so essential in. periods of distress *354 and datiger as loans, can be controuled by the states, congress is yet essentially dependent upon the states. There is another objection to this tax. I regard it as a violation of the contract "made with the holders of the United States stock. ' The people of the United States, of whom the citizens of Charleston are a part, have contracted to pay so much per cent on the stock, by their agents, the general government. To authorise the citizens of Charleston to deduct a part from the interest agreed upon, they must possess the power of altering the contract^, without the consent of the holder of the stock; which would be a violation of the obligation of the contract. But the constitution expressly declares, they shall not violate the obligation of contracts. To recapitulate my objections to the tax, they are:.
Drayton, for motion^
Hayne, contra. .
1st. Because a tax upon stock of the United States, eo fiomine, is a tax upon the credit of the United States.
2nd. Because the credit of the United States was not a subject for taxation by the states anterior to the adoption of tho constitution; the credit of the United States being a result of the establishment of the government of the United States, and the constitution has given no new powers to ,the state governments.
3rd. Because the objects of taxation by the state governments are not diminished by withholding from them the power of taxing stock of the United States; as the money borrowed by the United States is immediately, by disbursements, returned to the people of the different States.
4th. Because it renders the general government dependent upon the discretion of the state governments for one of its essential means, in accomplishing the purposes for which it was established; a result at variance vrith one of the principal objects of the constitution, which was to render the general government independent of the pecuniary aid of the state governments; and lastly,
Because it is a violation of the obligation of contracts.
Nott and Bay, justices concurred in the above dissenting opinion.